**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

---

|                                                                                  |   |                        |
|----------------------------------------------------------------------------------|---|------------------------|
| VIRTUALPOINT, INC.,                                                              | X |                        |
|                                                                                  : | Index No.:             |
|         *Plaintiff*,                     : |                        |
| -against-                                                                        : |                        |
|                                                                                  : | **COMPLAINT**          |
| GILDO PALLANCA-PASTOR; VOXAN MOTORS; and VENTURI AUTOMOBILES,                    : |                        |
|                                                                                  : | **JURY TRIAL DEMANDED**|
|         Defendants.                      : |                        |
|                                                                                  X |                        |

Plaintiff VirtualPoint, Inc. ("VirtualPoint" or "Plaintiff"), by and through its undersigned attorneys, for its Complaint against Defendants Gildo Pallanca-Pastor ("Defendant Pallanca-Pastor"), Voxan Motors, and Venturi Automobiles (collectively "Defendants"), alleges as follows:

**NATURE OF ACTION**

1. VirtualPoint brings this action against Defendants for a Declaration from this Court that: (i) Plaintiff has not violated the Lanham Act, 15 U.S.C. § 1125(a) or (c), or the Anti-Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C § 1125(d), and (ii) Plaintiff is the rightful registered name holder or registrant of the <Voxan.com> site name registration (the "Site Name"), which is the subject of a Uniform Domain Name Dispute Resolution Policy proceeding commenced by Defendants through the World Intellectual Property Organization on or about July 7, 2020 (the "UDRP Proceeding"). Plaintiff also petitions the Court to cancel the fraudulently-obtained and abandoned VOXAN trademark, U.S. Reg. No. 4457763.

## THE PARTIES

2. VirtualPoint is a California corporation with a principal place of business at 1340 Reynolds Ave., # 116-290, Irvine, CA, 92614-5525.

3. Upon information and belief, Defendant Gildo Pallanca-Pastor is a resident of Monaco, with an address of 7 rue du Gabian 98000.

4. Upon information and belief, Defendant Venturi Automobiles is a company organized under Monegasque law, with a principal place of business at Gildo Pastor Center, 7 rue du Gabian 98000, Monaco.

5. Upon information and belief, Defendant Voxan Motors is a company organized under Monegasque law, with a principal place of business at Gildo Pastor Center, 7 rue du Gabian 98000, Monaco.

6. Upon information and belief, Defendant Venturi Automobiles is the parent company of Defendant Voxan Motors and controls and directs its activities. Upon information and belief Defendant Gildo Pallanca-Pastor maintains complete control over Defendant Venturi Automobiles and thus Defendant Voxan Motors as well.

## JURISDICTION AND VENUE

7. Pursuant to 28 U.S.C. §§ 2201(a) and 2202, VirtualPoint seeks a declaration and judgment regarding its rights and obligations in an actual controversy within this Court's jurisdiction between VirtualPoint and Defendants concerning VirtualPoint's rights in and to the Site Name. Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question, and 28 U.S.C. § 1338(a), giving this Court original and exclusive jurisdiction in a civil action arising under the trademark laws of the United States.

8.	This Court has personal jurisdiction over Defendants since Defendant Pallanca-Pastor commenced the UDRP Proceeding against Plaintiff, and consented to this judicial district in connection with challenges to that proceeding.  In so doing, Defendant Pallanca-Pastor was acting on behalf of, in concert with, and as an agent of Defendants Voxan Motors and Venturi Automobiles.

9.	Defendant Pallanca-Pastor also owns trademark registrations for the mark VOXAN in the United States, U.S. Reg. No. 4457763 (the "763 Mark"), for motorcycles and motorcycle parts, and Reg. No. 4766932, for software, electrical systems, clothing, and science and technological services, among others (the "932 Mark").  Defendants have filed a specimen of use with the United States Patent and Trademark Office for the 763 Mark, attesting to their alleged use in commerce of the VOXAN trademark in the United States.  The Court retains jurisdiction of Plaintiff's cancellation petition of the 763 Mark under 15 U.S.C. § 1119, § 1121.

## FACTS COMMON TO ALL COUNTS

Background

10.	Plaintiff VirtualPoint is a web development firm based in Southern California that specializes in the purchase of prominent site names and the development of websites such as UDRPsearch.com, Verimark.com, Frip.com, Kidex.com, and Y10.com.

11.	Upon information and belief, Defendant Pallanca-Pastor is the President of Venturi Automobiles and Voxan Motors.

12.	Upon information and belief, Defendants design electric concept cars, vehicles, and motorcycles.

13. Upon information and belief, Voxan Motors struggled financially and was forced into compulsory liquidation in 2009. Although assets of the company were acquired by Venturi Automobiles in 2010, the company struggled and shuttered the brand again in 2015.

14. Called "almost totally unknown in the United States" by UltimateMotorCycling.com, the latest reboot of the Voxan Motors brand was not launched until late 2018.

15. Upon information and belief, since Voxan Motors's reincarnation in late 2018, Defendants have apparently focused on breaking the electric motorcycle land speed record with a modified version of their Voxan Wattman motorcycle.

16. Upon information and belief, no Voxan Motors motorcycles have ever been sold in the United States, and none are currently being sold.

17. Upon information and belief, Voxan Motors has no dealerships in the United States.

18. Upon information and belief, the 763 Mark was obtained with a fraudulent specimen of use, which was not, in fact, in-use.

Site Name Negotiations

19. VirtualPoint acquired the Site Name on April 28, 2020, after its prior registrant allowed it to lapse.

20. At the time that it acquired the Site Name, VirtualPoint had never heard of Defendant.

21. On May 6, 2020, Defendants, through the non-disclosed intermediary Jean-Francois Poussard ("Mr. Poussard"), of the company "SolidNames," made an offer to purchase the site name <Voxan.com> for $2,000.

22.     Upon information and belief, and the representations made on the Website, located at www.SolidNames.fr, SolidNames is a French company that offers IP protection services, as well as brokers site name transactions.

23.     Plaintiff rejected the offer of $2,000. When Mr. Poussard countered with $3,000, Plaintiff responded with an asking price of $297,000.

24.     The asking price was based primarily on the fact that the Site Name is a valuable five-letter, pronounceable dot com, and that the buyer was represented by a broker.  It is also not at all uncommon for short, brandable dot com site names to sell for six figures, and a surefire way not to maximize the sale price of any site name is to set the price too low.

25.     A negotiation ensued wherein Mr. Poussard made thirteen total offers, ending with a final offer on June 4, 2020 of $40,050, which Plaintiff countered with a final offer of $144,800.

26.     Defendants' identity was unknown to Plaintiff during the negotiations.  Mr. Poussard never disclosed that he was representing Defendants, much less any trademark holder.

27.     Each time that Mr. Poussard made an opening offer, he was required to agree to terms of use, which appeared in a pop-up window, that stated:



28. Mr. Poussard confirmed six times through three separate negotiations that his offers were being submitted in "**G**ood **Faith**," and that he was "not making a **Claim of Entitlement** to the **Voxan.com** site name."

29. It now appears that Mr. Poussard, and the party on whose behalf he was acting, were negotiating in bad faith, commencing a UDRP Proceeding when they could not acquire the Site Name for the price that they wanted to pay.

30. At various points in the negotiations, Mr. Poussard made comments, some of which reinforced the idea that he was representing an individual, who was interested in using the Site Name for a new business, and never stated that he was representing a party that claimed trademark rights in the Site Name.

31. On May 25, 2020, in connection with a $25,000 offer, he stated: "Hello, Thanks for your time durient (sp) the negotiation. It is our last offer. We can't increase our budget. Please accept it or cancel the negotiation."

32. On May 29, Mr. Poussard wrote: "Do you have studied our last offer?"

33. In response to a counteroffer of $175,000, which represented a drop of over $100,000 in the latest offer price, Mr. Poussard responded: "I am sorry but 25,000 $ is our last offer. We can't increase it."

34. On June 1, 2020, Plaintiff cancelled the negotiation with the added comment: "We're sorry, but we think you may not be the right buyer".

35. On June 3, 2020, Mr. Poussard commenced a new negotiation, with an opening offer of $40,000. He wrote that his client "was disappointed to not find an agreement" and "he likes this site name." His client decided to increase his offer to $40,000, which was "a very good price for a domain registered 4 years ago."

36. In response to Mr. Poussard's offer, on June 4, 2020, Plaintiff countered with $144,800, with the caveat that "this would be the best that can be done."

37. When Mr. Poussard did not respond to the counteroffer by the system deadline, Plaintiff cancelled the negotiation on June 8, 2020.

38. At no time during the negotiations did Mr. Poussard state the identity of his client, or that his client claimed trademark rights in the term "voxan." Instead, he implied that his client liked the Site Name for a *new* venture.

Defendants File Abusive, Meritless UDRP Proceeding

39. Shortly after, on June 29, 2020 (and amended on July 8, 2020), Defendants filed a wildly misleading and abusive complaint with the World Intellectual Property Organization (the "WIPO Complaint").

40. Among many other false allegations contained in the WIPO Complaint, Defendants accused Plaintiff of having redirected the Site Name in 2018 to the Website www.motoshark.com, which sold motorbikes. Contrary to such allegations, Plaintiff did not own the Site Name in 2018, and thus could not have performed such redirection.

41. Defendants also misleadingly implied that Plaintiff demanded $290,000 for the Site Name, when contacted by *Defendants*, when in reality that was Plaintiff's counter-offer (which Plaintiff reduced over the course of negotiations) to Defendant's increased $10,000 offer.

42. As a preliminary matter, it was Mr. Poussard, not the Defendants, who contacted Plaintiff on behalf of a non-disclosed client.

43. The Voxan Motors brand is obscure and not known in the United States, and nothing about the approach communicated the name of the buyer.

44. Additionally, it was Mr. Poussard who made the first offer, after agreeing only to make offers in good faith, and disclaiming any "entitlement" to the Site Name.

45. None of the communications from Mr. Poussard referred to an asserted trademark or made a demand that Plaintiff cease and desist from trademark infringement.

46. Plaintiff would never engage in negotiations with a party claiming trademark rights to the Site Name, and only sought to entertain offers from prospective purchasers who claimed no such rights (hence the terms agreed to when submitting an offer).

47. As it relates to the Site Name, "Voxan" is a pronounceable five-letter word, with registered or common law marks in use by a number of companies around the world in connection with various products, including:

- VOXAN, owned by Richter Pharma AG, for "[Class 5] Pharmaceutical and veterinary products. . ."

- VOXAN PHARMACEUTICALS (INDIA), owned by BAHADURSINGH RATHORE, for "[Class 5] Medicine."

- VOXAN, owned by BASF SE, for "[Class 1] Chemicals used in agriculture, horticulture and forestry . . ." and "[Class 5] Preparations for destroying and combating vermin, fungicides, herbicides, pesticides."

- VOXAN, owned by Bisteny, S.A., in Class 12 and Class 35.

- VOXAN TECHNOLOGIES, <voxantechnologies.com> common law use in connection with renewable energy software development.

48. A number of other "VOXAN" formative marks are or were registered and in use around the world, including, VOXANT, VOXANE, VOXANET, CERVOXAN, LEVOXAN, FLAVOXAN, VOXANTEN, and FLOVOXAN.

49. Globally, there are nearly 3,500 live and dead registered trademarks and applications for marks that contain the root "OXAN," including for OXAN, HOXAN, ROXAN, POXAN, TOXAN, COXAN, ZOXAN, WOXAN, DOXAN, LOXAN, MOXAN, EOXAN, FOXAN, BOXAN, NOXAN, and many others.

50. Numerous "OXAN" formative site names have also been registered, and some are in use, including: AOXAN.COM, BOXAN.CLUB, BOXAN.COM, BOXAN.NET, BOXAN.ORG, COXAN.BIZ, COXAN.COM, COXAN.NET, COXAN.ORG, COXAN.US, DOXAN.COM, DOXAN.LINK, DOXAN.NET, DOXAN.ORG, DOXAN.XYZ, FOXAN.COM, GOXAN.COM, HOXAN.COM, HOXAN.CO.JP, HOXAN.LINK, HOXAN.NET, HOXAN.SHOP, IOXAN.COM, JOXAN.COM, JOXAN.LINK, KOXAN.COM, LOXAN.COM, LOXAN.NET, MOXAN.COM, MOXAN.NET, NOXAN.COM, NOXAN.PL, NOXAN.NET, NOXAN.ORG, OXAN.COM, POXAN.COM, QOXAN.COM, ROXAN.BIZ, ROXAN.COM, ROXAN.CO.UK, ROXAN.INFO, ROXAN.LINK, ROXAN.NET, ROXAN.ORG, ROXAN.ROCKS, ROXAN.SHOP, ROXAN.WATCH, ROXAN.WEBSITE, SOXAN.COM, TOXAN.COM, UOXAN.COM, VOXAN.ORG, WOXAN.COM, WOXAN.NET, XOXAN.COM, YOXAN.COM, YOXAN.EMAIL, YOXAN.LINK, ZOXAN.COM, and ZOXAN.NET.

51. The above usages and registrations of "VOXAN" and "OXAN" formative names establish that "VOXAN" is in a crowded name space, and nothing more. The claim that Plaintiff knowingly registered the Site Name to target Defendants' VOXAN mark is terribly misguided and lacks support under the law.

52. Generic, made-up, and dictionary word site names are bought and sold every day. Furthermore, more than a dozen companies worldwide either use "VOXAN" as their trademark for different products, or their marks incorporate "VOXAN" in its entirety. Expand the field to marks containing "OXAN," and there are many, many more.

53. Prior to acquiring the Site Name, Plaintiff had never heard of Defendants, who are barely known in the United States outside of obscure motorcycle enthusiasts. Plaintiff's interest in the Site Name was for the same reason that so many companies have adopted "VOXAN" and "OXAN-formative" names – because it is a pronounceable, memorable, and brandable name.

54. Accordingly, Plaintiff did not register the Site Name with any intent to sell it to Defendants. Indeed, Plaintiff never heard of Defendants, never initiated contact with Defendants, and never initiated an offer to sell the Site Name to Defendants, until approached by Defendant Pallanca-Pastor about acquiring the Site Name (and even then Plaintiff did not know the identity of Defendants). Plaintiff's primary business is and was in identifying and registering useful site names for potential development.

55. Plaintiff has registered many descriptive, generic, and dictionary words over the years.

56. In this context, it is completely unremarkable that Plaintiff registered the Site Name – it is exactly the type of site name that Plaintiff seeks for its generic and brandable value – **not** to target or profit off of Defendants' fraudulently-obtained trademark.

57. In the absence of any conceivable trademark violation, there is absolutely no basis for Defendants' claim of bad faith registration.

## COUNT I:
## CLAIM FOR DECLARATORY RELIEF

58. VirtualPoint repeats and realleges paragraphs 1 through 58 of this Complaint, which are incorporated herein.

59. The term "VOXAN" is a fanciful term used by over a dozen companies, internationally, in their names, in connection with a wide range of products.

60. Many more companies do business under trademarks comprised of the root word "OXAN."

61. Upon information and belief, Defendants do not even use the Voxan Mark in the United States, and filed a fraudulent specimen of use with the United States Patent and Trademark Office.

62. Defendants' brand is barely known in the United States.

63. A person may register a generic, descriptive, dictionary, or made-up word or phrase as a site name on a first come, first served basis, as a general rule.

64. VirtualPoint, through its owner Mr. Lahoti, registered the Site Name in good faith, before he knew that Defendants even existed.

65. Defendants own no exclusive rights to the term "voxan" in the United States, or worldwide.

66. As Defendants commenced the UDRP Proceeding by filing the WIPO Complaint, which is pending as of the date of the filing of this Complaint, a justiciable controversy exists between VirtualPoint and Defendants.

67. To resolve this actual controversy, VirtualPoint seeks a declaration and judgment that its registration and use of the Site Name is lawful.

68. Defendants' conduct has harmed and will continue to harm VirtualPoint, and constitutes an "exceptional case," thereby entitling VirtualPoint to recover its attorneys' fees in connection with this action.

## COUNT II:
## CANCELLATION OF THE 763 MARK

69. VirtualPoint hereby incorporates the allegations of paragraphs 1 through 69 as if set forth here in full.

70. On January 30, 2014, Defendants applied for registration of the 763 Mark under class 44E, which registration was granted on July 7, 2015.

71. A specimen of use is not required to be filed at the time of a Section 44E application, and for six years following the date of registration.

72. On April 19, 2019, in connection with the renewal of the 763 Mark, Defendants are believed to have filed a fraudulent specimen of use.

73. The specimen of use filed by Defendants was not of a use in commerce in the United States.

74. Indeed, it merely displayed a photograph of a section of a concept motorcycle, not available for sale in the United States or anywhere in the world.

75. Upon information and belief, Defendants were not selling, and have not ever sold, any motorcycles or other products in the United States.

76. As a result, the 763 Mark is believed to have been fraudulently-obtained. the United States.

77. Accordingly, Plaintiff petitions the Court to cancel the 763 Mark.

78. The 763 Mark appears to also have been abandoned.

79. Defendants ceased to use the VOXAN mark, worldwide, in 2009, and again from 2015 until at least late 2018, with no intention to resume use of the mark.

80. The period of abandonment of any use of the VOXAN mark of over three years creates a legal presumption that Defendants intended to abandon the VOXAN mark.

81. Defendants still do not appear to have made any use of the VOXAN mark in connection with any goods or services in the United States.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

A. Declaration by the Court that, pursuant to 28 U.S.C. § 2201 and § 2202, Plaintiff's registration of the Domain Name is lawful and does not infringe on any trade or service mark right the Defendants may claim in the United States;

B. Cancellation of the 763 Mark with the USPTO;

C. Costs and expenses, including reasonable attorneys' fees awarded in an "exceptional case"; and

D. For such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Please take notice that Plaintiff, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, hereby demands trial by jury for all issues so triable.

Dated:   Brooklyn, New York
         July 22, 2020

**LEWIS & LIN, LLC**

_____
Brett E. Lewis, Esq.
Michael D. Cilento, Esq. (admitted *pro hac vice*)
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Brett@iLawco.com
Michael@iLawco.com

*Attorneys for Plaintiff*